## Olschiefsky v. The Times Publishing Co.

*S. Thaddeus Kwiat*, for plaintiff.

*English, Gilson, Baker & Bowler*, for defendant.

LAUB, J., May 29, 1959.—Defendant conducted in its newspaper a "Dollarwords" puzzle contest, offering certain money prizes to the winners. Plaintiff, a resident of Florida, entered the competition and submitted solutions which he claims were the correct ones. Because defendant has refused to pay his demands for the prizes with interest, he brought this action for breach of contract and filed a complaint in support thereof. Defendant filed preliminary objections in the nature of a demurrer and a motion for a more specific complaint. This brings the matter before us for disposition.

Plaintiff has alleged that during January and March 1957, he correctly solved three of defendant's puzzles, mailed them to defendant prior to the published deadline by air mail, special delivery, and has demanded payment of the prizes without avail. He does not allege that defendant received his entries, nor does he allege that he was a winner, contenting himself with reciting circumstances from which he expects such conclusions to be drawn. In view of the nature of the contest, these matters are important as shall be seen later. It should be noted that, although claiming to have submitted the correct answers to three of defendant's weekly puzzles, plaintiff had filed his claim for only two prizes, a circumstance not explained in the complaint.

Defendant has demurred on the ground that there was no consideration to support a contract, its stipulation to confer a prize on the winners being merely an offer to bestow a gratuity. It also maintains that under the terms of the contest as shown by the rules attached to the complaint, the decision of the judges was final and incontestible by any of the competitors. Our attention will first be directed to these claims.

A contract to give a prize or premium is not regarded as immoral or illegal unless prohibited by statute, nor is it necessarily a gambling arrangement: Campbell v. Beaman, 68 Pa. Superior Ct. 30, 39. Our attention has been called to no decision which regards public competitions or puzzle contests of this sort as lacking in consideration. On the other hand, there are a number of precedents to the contrary. Typical of these is Robertson v. United States, 343 U. S. 711, 72 S. Ct. 994, a case in which a prize was offered and conferred at the conclusion of an open public competition to determine the best musical composition created by the entrants. In reaching the conclusion that the competition constituted a contract, the Supreme Court of the United States had this to say (page 713):

"The acceptance by the contestants of the offer tendered by the sponsor of the contest creates an enforceable contract."

In Schreiner v. Weil Furniture Co., 68 So. 2d 149, where plaintiff was the winner of a "Count-the dots" contest sponsored by a furniture company, the Court of Appeals of Louisiana commented (page 151):

"When plaintiff performed all of the requirements of the offer in accordance with the published terms, it created a valid and binding contract, under which she became entitled to the promised rewards. That there was a serious and mutual consideration is obvious."

A number of other precedents dispose of various problems involved in this sort of litigation without reference to the question of consideration, treating the matter as though consideration was so obvious as to brook no question. Among cases of this type are Krueger v. Elder Mfg. Co., 260 S. W. 2d 349 (Mo. App.) (a jingle contest); Furgiele v. Disabled American Veterans, etc., 116 F. Supp. 375 (word puzzle contest), and our own case of Trego v. Pennsylvania Academy, 2

Sadler 313, a painting competition established to stimulate interest in art. The Restatement of the Law of Contracts §521, undertakes to differentiate between prize contests and wagering ventures, and in comment (*a*) makes this significant statement: "The competition itself is the agreed exchange for the promised prize."

The question whether plaintiff is out of court because of the provision which binds contestants to the decision of the judges is more perplexing. The pertinent rule published by defendant in this regard is as follows: "There is only one correct solution and only a correct solution can win. There is only one answer that in the opinion of the judges is the BEST word fitting the definition in each clue. The decision of the judges shall be final and all contestants taking part agree to accept these rules as a condition of entry."

From this it would appear that the correct answer to each puzzle was a predetermined matter involving no exercise of discretion on the part of the judges. Their duty apparently consisted merely in comparing answers with a model solution supplied to them, a scrutiny to determine whether other requisites of the rules had been complied with, and an announcement of the winners. The situation in this case is entirely different than obtained in Trego v. Academy, supra, for there the award of the prize depended completely upon the judges' concept of the merits of the paintings entered in the contest. Their discretion was to control and, having exercised it, their decision could not be altered in contravention of the contest contract. It is true that in the present case the sentence "There is only one answer that in the opinion of the judges is the BEST word fitting the definition," etc., is capable of being construed as requiring the exercise of discretion, but taken in context, it is also capable of the construc-

tion that the correct solution was predetermined. At any rate, the language being ambiguous, the matter is one for a jury, particularly in the light of the principle that the wording of a contract must be construed most strongly against the party who prepared it.

In justice, the rule ought to be as stated in Minton v. F. G. Smith Piano Co., 36 App. D. C. 137, 33 L. R. A. (N. S.) 305, that an agreement by a contestant to abide by the decision of the judges does not estop himself from contesting their rejection of his solution on a ground not made a condition of the contest by its sponsor. Good faith is always an inherent quality of any contract, and if the judges of a contest exercise such good faith, and stay within the contract terms, a contestant ought to be bound by his commitment to accept their decision. On the other hand, if the judges act fraudulently, in bad faith and go outside the rules in making a decision, a contestant's agreement not to contest it should not bind him: Furgiele v. Disabled American Veterans, etc., supra.

In the present case plaintiff has made no averments of bad faith or breach of the contract rules such as would release him from his agreement to abide by the judges' decision. In consequence, his complaint is fatally defective unless corrected. The rule that a complaint should not be dismissed without affording an opportunity for amendment does not permit us to enter summary judgment at this time on the demurrer. Plaintiff will accordingly be afforded the chance to restate his case.

We shall next consider defendant's preliminary objections in the nature of a motion for a more specific complaint. In this regard defendant is on firm ground, for in addition to the absence of the material mentioned above, plaintiff has completely failed to aver compliance with those conditions which are

essential to recovery. It is true that under Pa. R. C. P. 1019 (c), conditions precedent may be generally averred, but this refers only to those conditions which call for the happening of some event after the terms of the contract have been agreed upon. It does not apply to averments which strike at the heart of the agreement itself.

In the present case plaintiff has not shown a good acceptance of defendant's offer, for he has failed to aver the facts upon which such acceptance can be predicted. According to the rules, Wednesday of each week was the deadline for the submission of solutions to that week's puzzle, and no solution was to be accepted which bore a postmark later than midnight on that day. The rules also provided for the announcement of winners on Friday and that defendant would not be liable for any entry which did not come to its attention. From this it can be seen that actual receipt of an entry was the meat of a good acceptance. The rules put all prospective participants on notice that actual receipt of a solution was essential, that there was a posting deadline and that each weekly contest would terminate at press time for Friday's publication. The judging of a contest of this nature could not take place simultaneously with the receipt of a set of answers, for some time had to elapse to enable the judges to compare solutions with the correct one, to decide whether contest rules had been complied with, and to make awards, dividing them in cases of a tie, etc. It was obvious therefore that the mere posting of a solution prior to the Wednesday deadline would not suffice to constitute a good acceptance of the offer. By setting that deadline, defendant eliminated from consideration those answers which failed to meet it, thus affording ample opportunity for the judging of those solutions which arrived on time, but defendant did

not thereby agree to accept every solution posted before midnight Wednesday. The very terms of the contest belie such intention, for each contest terminated at press time on Friday. The provision requiring actual receipt of an entry was obviously designed to cover such a situation as might occur where a prospective participant lived at a remote distance from defendant's presses. An entry mailed at midnight Wednesday in California, for example, could hardly reach the judges' hands in time for a decision prior to Friday's press time. Very likely, by the time such an entry reached defendant the weekly contest would have closed, the winners would have been announced and next week's contest have been launched. Therefore, it was not enough for plaintiff to aver the mailing date of his solutions, he must also aver that defendant received them in time to have them judged before Friday's paper went to press. Since he lived in Florida, plaintiff must have been aware that there was more to an acceptance than a mere meeting of the Wednesday deadline, and in this respect he differed from those contestants who lived in the area of defendant's circulation. There might be some argument in favor of the latter that the presumptions which follow the mailing of communications in due course would entitle them to go to a jury on the question of a timeliness, but such presumptions cannot come to this plaintiff's aid.

And now, to wit, May 29, 1959, defendant's preliminary objections in the nature of a demurrer are overruled, defendant's preliminary objections in the nature of a motion for a more specific complaint are sustained and the action is dismissed unless plaintiff files an amended complaint within 20 days consistent with the views herein expressed.